**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  09-cv-01750-REB-BNB

NORTHWEST DIRECT TELESERVICES, INC.,

      Plaintiffs,

v.

TOUCHSTAR SOFTWARE CORPORATION,
KAYNE ANDERSON INVESTMENT MANAGEMENT, INC.,
ADAM MICHELIN,

      Defendants.

## PRELIMINARY INJUNCTION

**Blackburn, J.**

The matter before me is plaintiff's **Motion For Temporary Restraining Order and Motion for Preliminary Injunction**  [#21][1] filed August 13, 2009.  I grant the motion for preliminary injunction on the terms stated in this order, and I deny the motion for temporary restraining order as moot.

### I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).  Defendant TouchStar Software Corporation is subject to a receivership proceeding in Colorado state court.  The receiver is not a party to this case.  The receiver has filed a "statement" [#32] concerning the plaintiff's motion for preliminary injunction.  The receiver argues that this court does not have jurisdiction over this dispute or that this court must abstain

---

[1] "[#21]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

from exercising its jurisdiction. I disagree. The pendency of the state court receivership proceeding concerning TouchStar does not impair this court's diversity jurisdiction in any way. Under the authorities cited by the receiver, abstention is not required or appropriate in this case.

## II.  BACKGROUND

On August 20, 2009, I held a hearing on the plaintiff's motion for preliminary injunction. The plaintiff appeared with counsel, as did defendant Kayne Anderson Investment Management, Inc. Kayne Anderson noted, correctly, that the plaintiff has not requested any relief against Kayne Anderson in the plaintiff's motion for preliminary injunction. Defendants TouchStar and Adam Michelin did not file any response to the motion for preliminary injunction, did not appear at the hearing, and have made no filings in this case. At the beginning of the hearing, I credited the parties with all of the evidence they had presented, by affidavit and otherwise, as attachments to the motion for preliminary injunction and related filings, and with all arguments advanced in those filings. The receiver for TouchStar, who was appointed in the receivership proceeding in Colorado state court, also appeared through counsel. Although the receiver is not a party to this case, I permitted counsel for the receiver to make a presentation to the court concerning the motion for preliminary injunction.

Plaintiff Northwest Direct Teleservices, Inc., (NDT) provides inbound and outbound call center services to its clients. Currently, NDT has contracts to provide service for well over one hundred toll-free numbers. *Rote declaration* [#24], filed August 13, 2009, ¶ 3. Some time after April 2008, NDT agreed to purchase certain hardware and software from defendant TouchStar Software Corporation to operate NDT's

inbound and outbound calling systems. The agreement between NDT and TouchStar is attached to one of the declarations filed by NDT in support of its motion for preliminary injunction. *Rote declaration* [#24], filed August 13, 2009, Exhibit 1 (Agreement).

NDT has made all payments to TouchStar as required by the Agreement, except for a final payment of 47,000 dollars, which is to be made on NDT's acceptance of the TouchStar system. *Rote declaration*, ¶ 17. NDT asserts that the TouchStar system has substantial flaws and has failed to perform critical tasks. For example, the TouchStar system takes incoming calls, puts them into a waiting pattern called "inqueue," and then searches for NDT agents who have the skills necessary to take the calls. *Id*, ¶ 4. On an almost daily basis, the TouchStar system has left calls in the inqueue permanently, rather than transferring those calls to the next available agent. *Id.*, ¶ 10. In addition, NDT asserts that TouchStar failed to deliver components critical to the system, including an enterprise server. *Rote declaration*, ¶ 11. Instead, TouchStar provided two lower capacity servers that did not function properly. *Id.*, ¶¶ 11 -14. Because of these and other flaws in the TouchStar system, NDT has not made the final payment to TouchStar.

The Agreement provides for 192 agent or seat licenses. *Agreement*, p. 1. Each of these licenses apparently governs use of the TouchStar software by one of NDT's agents or employees. Section 2(c) of the agreement provides, *inter alia*, that TouchStar "may disable up to 48 Seats of Software in the event that Customer is not current on payment" of the remaining amount due to TouchStar. *Agreement*, p. 6, § 2(c). After NDT refused to make the final payment to TouchStar, TouchStar threatened to randomly disable and then re-enable various licenses during a day's operation and on a

daily basis. *Rote declaration*, ¶ 18. In addition, TouchStar expressed the ongoing threat that it would shut down the entire system. *Id*. Such shut-downs did occur multiple times for short durations. *Id*.

On August 6, 2009, at about 12:43 a.m., a TouchStar employee bypassed NDT's firewall and gained access to NDT's computer servers. *Rote declaration*, ¶ 19. TouchStar then deleted from NDT's servers some of TouchStar related software and some non-TouchStar related software. *Id.*, ¶ 20. These actions disabled NDT's use of the TouchStar software and other functions of the computer servers. *Id.*, ¶ 21; *Farrell declaration* [#23], filed August 13, 2009, ¶¶ 6-7. I note that at the August 20, 2009, hearing, counsel for the receiver presented some evidence indicating that the TouchStar software had been programed to be disabled on July 30, 2009. Although the authenticity of that evidence was not established at the hearing, I conclude that this evidence, even if credited, is of no consequence in my preliminary injunction analysis. Notably, there is no evidence in the record that the agreement between NDT and TouchStar provided a deadline or other basis for TouchStar to program the software to be disabled as of July 30, 2009.

After August 6, 2009, NDT paid a third-party to perform certain call center operations and devised some stop-gap solutions to the problems created by its TouchStar's August 6, 2009, actions. *Rote declaration*, ¶¶ 21-22. Evidence submitted by NDT indicates that the flaws in the TouchStar system and, more importantly, TouchStar's actions to disable the TouchStar system on August 6, 2009, caused substantial disruption to NDT's business, including a substantial threat to NDT's goodwill with many of its customers. In its complaint in this case, NDT asserts four

claims against the defendants, including breach of contract, breach of covenant of good faith and fair dealing, fraud, and a claim for declaratory and injunctive relief. In its motion for preliminary injunction, NDT ask that I enter a preliminary injunction:

> 1) that requires TouchStar to restore the software and hardware system it provided to NDT to the same operational status that exited at the time this litigation was filed, April 13, 2009;
>
> 2) that requires TouchStar to convert NDT's broadcasting licenses from temporary to permanent; and
>
> 3) that prohibits TouchStar from randomly revoking any agent licenses from NDT's servers.

*Motion for preliminary injunction* [#21], p. 1.

### III.  ANALYSIS

In determining whether a preliminary injunction should issue, I have judicially noticed all relevant adjudicative facts in the file and record *pro tanto*; I have considered the evidence adduced at the hearing; I have considered the oral argument made by counsel for the plaintiff and counsel for the receiver, and I have considered the evidence presented, reasons stated, arguments advanced, and authorities cited by the parties and receiver in their papers.

A preliminary injunction is extraordinary relief. A party seeking a preliminary injunction or a temporary restraining order must show: (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing

party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). I have considered carefully each of these factors. On balance, the record in this case demonstrates that these factors weigh heavily and compellingly in favor of injunctive relief for the plaintiff in the form of a preliminary injunction.[2] I conclude ultimately as follows: (1) that there is a substantial likelihood that, at minimum, NDT eventually will prevail on the merits of its breach of contract claim; (2) that NDT will suffer irreparable injury unless an injunction issues; (3) that the threatened injury to NDT outweighs whatever damage the injunction may cause TouchStar; and (4) that the injunction, if issued, would not be adverse to the public interest.

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 65, the plaintiff's **Motion For Temporary Restraining Order and Motion for Preliminary Injunction** [#21] filed August 13, 2009, is **GRANTED EFFECTIVE FORTHWITH** to the extent the plaintiff requests relief in the nature of a preliminary injunction and on the terms stated in this order;

2. That the plaintiff's **Motion For Temporary Restraining Order and Motion for Preliminary Injunction** [#21] filed August 13, 2009, is **DENIED** as moot to the extent the plaintiff requests relief in the nature of a temporary restraining order;

3. That as soon as practicable, and not later than 72 hours from the time this order is entered, defendant, TouchStar Software Corporation, **SHALL RESTORE** the

---

[2] Although not addressed in the briefing or at the hearing, I note that a party seeking a mandatory preliminary injunction – an injunction that directs a party to take action – bears the heavier burden of showing that the factors listed above weigh heavily and compellingly in the movant's favor. *See, e.g., U.S. v. Power Engineering Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999). The evidence in this case satisfies this standard.

software and hardware system that TouchStar Software Corporation provided to plaintiff, Northwest Direct Teleservices, to an operational status;

    4. That defendant, TouchStar Software Corporation, **SHALL PROVIDE** plaintiff, Northwest Direct Teleservices, with consistent and reliable access to 144 agent licenses that are operational in conjunction with the software and hardware system provided to plaintiff, Northwest Direct Teleservices, by defendant, TouchStar Software Corporation;

    5. That defendant TouchStar Software Corporation is **ENJOINED AND RESTRAINED** from including in the TouchStar software and/or hardware system used by plaintiff, Northwest Direct Teleservices, any expiration dates or other instructions, codes, programs, or other devices that will act to disable the TouchStar software at any time;

    6. That defendant TouchStar Software Corporation is **ENJOINED AND RESTRAINED** from taking any action to disable, disrupt, impair, or inhibit the operation of the TouchStar software and hardware system used by plaintiff, Northwest Direct Teleservices;

    7. That these orders **SHALL APPLY** to defendant, TouchStar Software Corporation, its agents, servants, employees, independent contractors, consultants, attorneys-in- fact, attorneys-in-law, and any and all persons in active concert or participation with TouchStar Software Corporation, jointly or severally, who receive actual notice of this Preliminary Injunction by personal service or otherwise; and

    8. That under FED. R. CIV. P. 65(c), and by Wednesday, August 26, 2009, at 5:00 p.m. (mountain daylight time), plaintiff, Northwest Direct Teleservices, **SHALL DEPOSIT** with the Clerk of the Court a bond in the amount of **5,000 (five thousand)**

**dollars** for the payment of such costs and damages as may be suffered by any party later found to have been wrongfully restrained or enjoined;

Dated and effective August 24, 2009, at 4:00 p.m. (MDT), at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge